## Forman v. Pennsylvania College of Podiatric Medicine

*Bernard L. Segal*, for plaintiff.
*Robert Greenfield*, for defendant.

HIRSH, J., March 20, 1972.—This is a complaint in equity for

A. A temporary restraining order enjoining defendants from excluding plaintiff from attendance at classes pending a hearing on his motion for preliminary and permanent injunctions;

B. A preliminary and permanent injunction enjoining defendants from excluding plaintiff from attending classes and taking examinations;

C. Award of damages of not less than $10,000 and costs, from each defendant;

D. Such other relief as the court may deem necessary and appropriate.

The pleadings consist of complaint in equity and answer to the complaint in equity with new matter.

In addition, it should be noted that plaintiff was granted an order allowing a preliminary injunction without hearing under date of March 2, 1972, enjoining and restraining defendant college from excluding plaintiff from attendance at the second semester classes at defendant college based on an affidavit filed by plaintiff alleging irreparable harm arising out of his exclusion from attendance at the college.

At trial, all parties stipulated that the testimony taken would constitute a full and final hearing of all issues raised by the complaint in equity and all other pleadings. The issue raised is whether (1) the dismissal of plaintiff violated the terms of a "contract" between plaintiff and the college; (2) plaintiff's exclusion was unconstitutional, unlawful and arbitrary in that it violated constitutional standards of procedural due process.

## FINDINGS OF FACT

The court finds the following facts:

1. Plaintiff, William R. Forman, was enrolled as a

second-year student in the defendant, Pennsylvania College of Podiatric Medicine, prior to January 26, 1972.

2. Defendant, Pennsylvania College of Podiatric Medicine, is a nonprofit corporation organized under the laws of Pennsylvania and located at 804 Pine Street, Philadelphia, Pa. Its educational program is approved by the Department of Public Instruction, Bureau of Higher Education, and it is accredited to confer the degree of Doctor of Podiatric Medicine on students who complete its four-year course of instruction.

3. Defendant, James E. Bates, is president of defendant college and performs the customary functions of the president of a college accredited for awarding advanced degrees.

4. Defendant, Charles W. Gibley, Jr., is the dean of defendant college. In this capacity, he has administrative responsibility for the conduct of student affairs and carries out those faculty decisions which pertain to his area of responsibility.

5. Defendant, Paul R. Quintavalle, is chairman of the board of trustees of defendant college.

6. Defendant receives appropriations from the Federal government and the Commonwealth of Pennsylvania. The college voluntarily charges a lower tuition to Pennsylvania resident students than to out-of-State students.

7. The faculty of defendant college has adopted regulations which apply to all students who attend defendant college.

8. The regulations contain the following provisions:

"Since matriculation in the Pennsylvania College of Podiatric Medicine is a privilege and not a right, the faculty retains the prerogative to request withdrawal of any student who does not attain adequate academic

performance or who does not exhibit the personal qualifications demanded in the practice of podiatric medicine. These criteria shall apply at all times during the curriculum. . . .

"Academic Probation: Probation is a condition under which a student cannot advance to the next semester, be promoted from one year to the next, or be graduated from the College. A student may be placed on academic probation for any of the following reasons:

"(1) poor scholastic record.

"(2) excessive absences from the classroom, laboratory, seminar or clinic assignments

"(3) unprofessional attitude as determined by the faculty after consultation with the academic dean.

"A second offense while on academic probation will result in the suspension of the student.

"Grades: In most subjects, the grades are recorded on a numerical basis. Where the numerical basis is used, seventy shall be the passing mark in any and all examinations and classes. However, a student repeating a year must maintain a minimum grade of seventy-five in each subject at mid-year and final.

"Conditions and Reexaminations: Should any student receive less than the passing grade in two or more subjects, he is regarded as having failed the course and is required to repeat the entire year's work, subject to the approval of the faculty. . . .

"Class Promotions: A student who fails to achieve a general overall average of seventy-five for all subjects to the end of the academic year will not be promoted to the next year. At the discretion of the faculty and the academic dean, he may be permitted to repeat the year.

"Probation and Exclusion: If the student is repeating a year in the course of study, he will be considered on probation and will be required to make seventy-five

percent in all the subjects at the mid-year and final periods or be dropped from the school.

"Dismissal: It must be clearly understood by all students that the faculty and administration of the college have the authority to drop any student from the rolls, or to refuse readmission at any time prior to graduation, if circumstances of legal, moral, health, social or academic nature justify such an action.

"The rules and regulations contained above may be changed at any time by the college. Additions and amendments may be made to these regulations at any regular meeting of the faculty."

9. Plaintiff matriculated at defendant college in September 1970.

10. Plaintiff failed to achieve passing grades in two subjects in the second semester of his first year ending June 1971, and on June 9, 1971, the faculty, at a duly convened and regular meeting, decided that he would be permitted to take reexaminations in said subjects and, if successful in each of them, to proceed to the second year on an academic probation status. Such status required him to achieve a grade of 75 in each subject in the first and second semesters of the second year.

11. By letter dated June 14, 1971, defendant, Gibley, informed plaintiff of his grades for the academic year 1970-71, and of the action taken by the faculty as follows:

"Successful completion of these reexaminations will permit your promotion into the second year, on a probationary status. You must achieve an average of seventy-five in each course during the first semester of 1971-1972 academic year in order to continue at the college. This average must be maintained at the end of the second semester if you are to be promoted into the third year."

12. Plaintiff took reexaminations in said two subjects and received passing grades in both.

13. Plaintiff entered the second year on academic probation in September 1971, and at that time, plaintiff signed a matriculation statement which contains the following:

"I, the undersigned, understand, accept and do abide by the terms, rules and requirements enacted by Faculty and the Board of Trustees of the Pennsylvania College of Podiatric Medicine as printed in the college bulletin and the accompanying pages."

14. In October 1971, the faculty adopted a new grading system. In lieu of numerical grades, a pass/fail system was instituted for all students.

15. Plaintiff completed the first semester and the results as reported to the faculty at a regular meeting on January 26, 1972, were that plaintiff had been given the grade "fail" in two subjects: microbiology and podiatric orthopedics. At said meeting, various motions which would have affected plaintiff's academic status were considered but none was passed.

16. On January 27, 1972, defendant, Gibley, orally informed plaintiff that he had failed two courses, microbiology and podiatric orthopedics, and was being dropped from the college.

17. On January 28, 1972, the orthopedics faculty reevaluated the grading of the students who had been given "fail" grades in the first semester of the second year, ascertained that there had been a grading error, and determined that all students in the orthopedics course in that semester should receive a "pass."

18. No change was made in the grading in microbiology, and plaintiff's grade in that subject for the first semester of the second year remained a "fail."

19. Pursuant to the change in the grading system adopted by the faculty, only grades of "pass" and "fail"

were given to students at the college in the first semester of the year 1971-72. There were no numerical equivalents, except that faculty regulations adopted October 6, 1971, provided that where a student was theretofore required to achieve a grade of 75, he must thereafter achieve "pass."

20. Plaintiff failed to meet the conditions of his probation in that he received a grade of "fail" in microbiology in the first semester of the second year.

21. On March 6, 1972, a special faculty meeting was held at the college to consider plaintiff's academic status with specific consideration of the effect of his having been given a "pass" and not a "fail" as previously reported to the faculty in podiatric orthopedics. Plaintiff and his counsel were given notice of the meeting and were present.

22. At said meeting, after extended discussion and a statement made by plaintiff's counsel, a motion to reinstate plaintiff was rejected by a vote of the faculty of 20 to 2.

## DISCUSSION OF FACTS AND LAW

Defendant, Pennsylvania College of Podiatric Medicine (hereinafter referred to as "college"), and the other named defendants oppose plaintiff's request for equitable relief on the ground that the faculty of the college has fully and fairly considered the academic qualifications of plaintiff and have given him the benefit of every procedural safeguard required and, in fact, have granted him privileges to which he is not entitled under the agreement between plaintiff and defendant college and that, after a complete review of plaintiff's academic qualifications, have properly exercised their judgment and determined that plaintiff has not met the necessary academic requirements and should, therefore, be dismissed. The evidence establishes that

plaintiff failed two subjects in his first year at the college and could, under the rules then in effect, have been required to repeat the entire year's work. While repeating that work, plaintiff would have been considered to be on probation and would be required to earn a grade of 75 in all subjects, although the usual passing grade was 70. The faculty gratuitously permitted plaintiff to take reexaminations in the two subjects and upon passing the said reexaminations, plaintiff was permitted to enter his second year on academic probation. Plaintiff was advised of this decision of the faculty in a letter addressed to him on June 14, 1971, by the academic dean. Upon readmittance, plaintiff executed a matriculation statement dated September 13, 1971, which provided, inter alia, that "I, the undersigned, understand, accept and do abide by the terms, rules and requirements enacted by the Faculty and the Board of Trustees of the Pennsylvania College of Podiatric Medicine. . . ."

Among the rules and regulations which plaintiff accepted was a faculty regulation which stated: "The Rules and Regulations contained above may be changed at any time by the College. Additions and amendments may be made to these regulations at any regular meeting of the faculty." In an exercise of this power of amendment, the faculty, on October 6, 1971, adopted revisions which changed the method of grading from a numerical to a pass/fail basis, and adopted an additional amendment providing:

"Replace 'to make 75%' with 'to achieve "Pass." ' "

At a regularly held faculty meeting on January 26, 1972, plaintiff was reported to have failed in the subjects of mircobiology and podiatric orthopedics.* The

---

* Subsequently, it was determined by the faculty that the rating employed by the class in podiatric orthopedics should be revised and as a result of that revision, plaintiff and all other members of said class were granted "pass" grades in that subject.

recommendation of the second-year faculty was that plaintiff be advised to withdraw and after floor discussion, the faculty determined that unless contrary action was taken at that meeting, plaintiff would be dismissed in accordance with the terms of the above-mentioned probationary letter sent to him on June 14, 1971.

Plaintiff was advised that, as a result of his failures, he was being dropped from the college. On March 6, 1972, a special meeting of the faculty was held with regard to the dismissal of plaintiff as a member of the second-year class. In addition to various members of the faculty comprising a quorum, the meeting was attended by Mr. Keller and Mr. Peck representing the college through Goodis, Greenfield, Henry, Shaiman and Levin, Esqs., and plaintiff and his legal counsel, Brian Eric Appel, Esq. The faculty was advised that plaintiff had instituted legal action against the college and also that the subject meeting was called to receive any further pertinent data relative to the evaluation of plaintiff's academic status. The faculty was urged to be objective in the light of any new information presented to them and also to disregard the fact that plaintiff had instituted action against the college. Plaintiff and his counsel were offered the opportunity to address the faculty and while plaintiff declined, his counsel apprised the faculty that any decision made by them should be based on the facts at this time and not related to the legal complaint. The faculty then considered plaintiff's grades as recorded and "corrected on this transcript" and, after a recess, a motion was made that plaintiff be readmitted to the second-year class immediately. Another member of the faculty commented that he felt that the faculty regulations should be upheld and there being no further discussion, upon closed ballot, the motion to readmit plaintiff was defeated 20 to 2.

There is general agreement that a contract exists between a student at an educational institution and the institution: Bredt v. Perkiomen School, 47 D. & C. 691 (1943); Iron City Commercial College v. Kerr, 3 Brewster 196 (1870); Barker v. Trustees of Bryn Mawr College, 278 Pa. 121 (1923). Accepting this premise, we find that the contract in this case consists of the rules and regulations contained in the official "Bulletin" of the college and any proper revisions or amendments made by the college. By the terms of the matriculation statement executed by plaintiff on September 13, 1971, he agreed to be bound by the ". . . terms, rules and requirements enacted by the Faculty . . . as printed in the College Bulletin . . ." The faculty regulations provide:

"It must be clearly understood by all students that the faculty and administration of the college have the authority to drop any student from the rolls, or to refuse re-admission at any time prior to graduation, if circumstances of legal, moral, health, social or academic nature justify such an action.

"The rules and regulations contained above may be changed at any time by the College. Additions and amendments may be made to these regulations at any regular meeting of the faculty": College Bulletin, "Faculty Regulations," p. 6.

It thus appears clear that in a proper exercise of this power, the faculty on October 6, 1971, adopted the aforementioned revision which changed the method of grading from a numerical to a pass/fail basis and replaced the requirement that a probationary student earn a grade of 75 to a requirement that he achieve a grade of "pass." It appears equally clear that plaintiff failed to achieve a "pass" grade in one of his subjects and that under the terms of his agreement with the college, as amended, was subject to the risk of being

dismissed, and the faculty, after full and careful consideration of plaintiff's academic standing, decided that plaintiff should be dismissed from the college. It does not appear from the evidence before us that plaintiff has been denied procedural due process, as there does not appear to be any legal requirement that the student be present at a faculty meeting held to determine academic performance.

In Mustell v. Rose, 282 Ala. 358, 211 So.2d 489, cert. den. 393 U.S. 936 (1970), the court held that the decision of a medical school faculty that a student should be dismissed for failure to attain requisite scholastic standards was properly made in the student's absence. In Militana v. University of Miami, 236 So. 2d 162 (Fla. App. 1970), the court held that notice of charges and an opportunity to be heard are essential to due process and required where a student is dropped from school for disciplinary reasons, but not where dismissal is for academic failure.

Notwithstanding the fact that due process does not require a hearing prior to dismissal on academic grounds, the college scheduled and held a special faculty meeting on March 6, 1972, at which plaintiff and his counsel were present and given an opportunity to be heard.

Considering all these facts, it appears that the college has acted fairly and that a proper application of this court's equitable discretion would rule against interference with the decision of the faculty.

Accordingly, plaintiff's prayer for the issuance of a permanent injunction enjoining defendants from excluding plaintiff from attendance at classes and taking examinations will be denied and plaintiff's prayer for damages and costs from each defendant will also be denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and of the subject matter of this proceeding.

2. Plaintiff seeks equitable relief from defendant, Pennsylvania College of Podiatric Medicine.

3. The dismissal of plaintiff did not violate the terms of a contract between plaintiff and defendant college but rather was in accordance with the terms thereof.

4. Defendant college has not denied plaintiff due process of law.

5. Defendant college has acted fairly and impartially in considering plaintiff's academic performance, and dismissed him solely by reason of poor academic performance.

6. The faculty of defendant college has authority to interpret and apply the regulations adopted by it relating to probation and dismissal of students and other academic matters. Its action on June 9, 1971, in permitting plaintiff to take the reexaminations in two subjects in which he had failed and thereupon to be admitted to the second year on academic probation, conditioned upon his achieving grade of 75 in each subject of the first and second semesters of that year, was a proper exercise of its authority.

7. Plaintiff's election to take reexaminations in the subjects in which he failed in the first year and to matriculate in the second year constituted an acceptance of the terms of his academic probation as set forth in the letter from defendant, Gibley, to plaintiff dated June 9, 1971, and became thereby a contract binding upon the parties.

8. It was a valid exercise of the authority of the faculty to change the method of grading from a numerical to a pass/fail basis and said change did not unfairly prejudice plaintiff. By virtue thereof, the condition of plaintiff's academic probation required his achieving a "pass" in each subject, in lieu of a grade of 75 in each subject, in the first and second semesters of his second year.

9. Plaintiff was lawfully and properly dismissed from the college in accordance with the terms on which he accepted academic probation by virtue of his having failed to achieve a "pass" in microbiology in the first semester of his second year.

10. Each of the individual defendants has acted lawfully and properly and in accordance with the authority of his office, pursuant to the proper conduct by defendant college of its business and with due regard for the maintenance and application of its established academic standards.

11. No damage has been caused to plaintiff by any of the acts of defendant complained of in this proceeding.

## DECREE NISI

And now, to wit, this March 20, 1972, it is hereby decreed and adjudicated as follows:

Plaintiff William R. Forman's complaint for an injunction and damages is dismissed. The Prothonotary of Philadelphia County is directed to file this adjudication, enter the within decree nisi, give notice to the parties or counsel of record as required by the rules of equity practice in Pennsylvania, and unless exceptions are filed to this decree nisi within 20 days after said notice, this shall be entered as a final decree by the prothonotary.